O

**PRIORITY SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No. EDCV 09-1009 VAP (MANx) Date: October 5, 2009

Title: MARCO A. GAITAN - *v* - ~~FEDERAL DEPOSIT INSURANCE COMPANY, as Receiver of Indymac Bank FSB; FEDERAL DEPOSIT INSURANCE COMPANY, Conservator of Indymac Federal Bank FSB, Successor in Interest to Indymac Bank FSB~~; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS; QUALITY LOAN SERVICES CORP.; ONEWEST FSB; and DOES 2 through 10, INCLUSIVE

===============================================================

PRESENT: HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

Jim Holmes, Relief
Courtroom Deputy

Phyllis Preston
Court Reporter

ATTORNEY PRESENT FOR PLAINTIFF:

Gregory H.D. Alumit

ATTORNEYS PRESENT FOR DEFENDANTS:

Jennifer Caroline Bercovici

PROCEEDINGS: MINUTE ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

The Motion for Leave to File a Second Amended Complaint filed by Plaintiff Marco A. Gaitan came before the Court for a hearing on October 5, 2009. After reviewing and considering all papers filed in support of, and in opposition to, the Motions, as well as the arguments advanced by counsel at the hearing, the Court DENIES the Motion for Leave to File a Second Amended Complaint in the manner set forth below.

## I. BACKGROUND

On April 8, 2009, Plaintiff Marco A. Gaitan ("Plaintiff") filed this foreclosure-related action in the California Superior Court for the County of Riverside, against the Federal Deposit Insurance Corporation ("the FDIC") in its capacities as receiver of Indymac Bank, F.S.B. ("Indymac") and conservator of Indymac Federal Bank, FSB, successor in interest to Indymac Bank, F.S.B.;[1] Mortgage Electronic Registration System, Inc. ("MERS"); Quality Loan Services Corp. ("Quality");[2] and ten unnamed Does. Doe 1 has since been identified as OneWest Bank, FSB ("OneWest").

On May 27, 2009, the FDIC removed the action to this Court, invoking the Court's federal question jurisdiction under 28 U.S.C. § 1441(b), based both on the FDIC's presence as a party and the presence of a claim brought under the Truth in Lending Act, 15 U.S.C. §§ 1601, et seq. ("TILA").

On June 3, 2009, OneWest and MERS filed a motion to dismiss the action. Before the Court could hold a hearing on that motion, Plaintiff attempted to file an amended complaint on July 27, 2009. On July 31, 2009, the Court held that Plaintiff was not entitled to file an amended complaint as a matter of right, and directed him to file a motion for leave to do so.

On August 10, 2009, Plaintiff filed the instant motion, seeking leave to file a Second Amended Complaint. OneWest and MERS ("the Opposing Defendants") filed an opposition on September 21, 2009, and Plaintiff filed a reply on September 28, 2009.

## II. THE OPERATIVE COMPLAINT

The operative complaint is the initial one filed in the Superior Court in April 2009, as modified by a nonsubstantive amendment filed in that court in May 2009.

The complaint seeks to avoid a trustee's sale of Plaintiff's residence in Corona ("the property"), set for April 14, 2009. (Compl. ¶¶ 2-3.) The property was the subject of two mortgage loans issued by Indymac Bank in July 20, 2007. (Compl. ¶ 12.) Plaintiff alleges that when these loans were negotiated, he was not provided with "certain disclosures pursuant to the TILA, including two (2) properly prepared Notices of Right to Cancel." (Compl. ¶¶ 20-21.)

Plaintiff also alleges several flaws in the documents he did receive, and that the existence of these flaws prove the mortgage loans were obtained by fraud. Specifically, he alleges that neither

---

[1] On September 11, 2009, while this motion was pending, Plaintiff voluntarily dismissed his claims against the FDIC.

[2] Quality Loan Services Corp. has yet to appear in this action. It is unclear if it has been served properly.

the "Adjustable Rate Mortgage ('ARM') loan documents" or the Truth in Lending Disclosure Statement ("TILD") "clearly and conspicuously disclose[d]": (i) the actual interest rate on which the scheduled payments were based; "(ii) that making the payments according to the payment schedule listed in the TILD will result in negative amortization and that the principal balance will increase; and (iii) that the payment amounts listed on the TILD are insufficient to pay both principal and interest." (Compl. ¶¶ 29, 44, 45.) Plaintiff alleges that not only were the disclosure statements "unclear and inconspicuous," but they were "deceptive" and "based in order to mislead and deceive Plaintiff into believing that he would be getting a loan with a low fixed payment rate that would be sufficient to pay both interest and principal." (Compl. ¶¶ 46, 49.)

Plaintiff also alleges that, although he has defaulted on the mortgage loans, he "can afford to make a monthly mortgage payment if the loan is modified . . . ." (Compl. ¶ 22.) He claims there exists a potential modification that is "affordable to Plaintiff" and "would be more profitable to the Defendants than a foreclosure." (Compl. ¶ 25.) Nevertheless, after discussions with the FDIC, the FDIC would only agree to a loan modification agreement that Plaintiff deemed "inequitable." (Compl. ¶ 26.) In a somewhat contradictory fashion, Plaintiff also alleges that the FDIC failed to contact him and "explore options for the borrower to avoid foreclosure," and that they failed to include a declaration attesting to such contact, prior to filing a notice of sale. (Compl. ¶ 59.)

Finally, Plaintiff alleges the Defendants were not the proper holders of the note on the loans and thus had no right to foreclose under the security instrument, and they have a practice of foreclosing on properties which they have no right to. (Compl. ¶¶ 89-91.)

Based on these factual allegations, the initial complaint contains eleven claims: (1) violation of TILA in failing to provide a notice of the right to cancel (Compl. ¶¶ 15-54, *passim*); (2) violation of TILA in failing to make clear and conspicuous material disclosures (Compl. ¶¶ 15-54, *passim*); (3) violation of Cal. Civ. Code § 2923.5 (Compl. ¶¶ 55-60); (4) violation of Cal. Civ. Code § 2923.6 (Compl. ¶¶ 61-64); (5) violation of Cal. Bus. & Prof. Code § 17200 (Compl. ¶¶ 65-73); (6) breach of the implied covenant of good faith and fair dealing (Compl. ¶¶ 74-85); (7) wrongful foreclosure (Compl. ¶¶ 86-99); (8) violation of the Rosenthal Fair Debt Collection Practices Act, "including but not limited to Civ. Code § 1788 (e) and (f)" (Compl. ¶¶ 100-102); (9) cancellation of the instruments (Compl. ¶¶ 103-107); (10) quiet title (Compl. ¶¶ 108-110); and (11) equitable rescission under Cal. Civ. Code § 1689 (Compl. ¶¶ 111-117).

As remedies for these violations, the original complaint seeks "actual," "compensatory," "consequential," statutory, and punitive damages; rescission of the loans at issue; equitable relief; restitutionary disgorgement; interest; declaratory relief; attorneys' fees and costs; and an order quieting Plaintiff's title to the property. (Compl. p. 20).

## III. THE PROPOSED SECOND AMENDED COMPLAINT

EDCV 09-1389-VAP (CWx)
MARCO A. GAITAN v FDIC, et al.
MINUTE ORDER of October 5, 2009

The proposed Second Amended Complaint ("SAC") is twice as long as the original complaint filed in state court, and contains seventeen, rather than eleven claims.[3] In amending the complaint, Plaintiff also seeks to correct the name of Defendant MERS. The factual allegations of the SAC are largely the same as those in the original complaint, with the following modifications.

Plaintiff now alleges that, on or around March 19, 2009, OneWest acquired all deposits, assets, and liabilities of Indymac. (SAC ¶¶ 18-19.)

As to the initial loan agreements, Plaintiff continues to allege he was not provided with certain disclosures required by TILA, (SAC ¶ 21), and the failure to make those disclosures clearly and conspicuously shows that the mortgage loans were obtained by fraud. (SAC ¶¶ 29.)

The SAC also continues to allege improprieties in the foreclosure process. On December 17, 2008, Defendants filed a Notice of Default, and on March 18, 2009, they filed a Notice of Trustee's Sale, set for August 28, 2009. (SAC ¶¶ 26-27.) Plaintiff alleges that, although he is in default or it is reasonably foreseeable that he will be in default on the loans, he can make reduced monthly payments on the loans that would be more profitable to Defendants than a foreclosure. (SAC ¶¶ 22, 24-25.)

There are a series of contradictory allegations as to the interactions between Plaintiff and Defendants about a loan modification. For example, Plaintiff alleges he contacted Defendants and proposed a modification to Defendants, but they refused to respond to his proposals, (SAC ¶ 23), yet goes on to allege OneWest is reviewing his proposed modification, but will not postpone the sale while it completes such a review. (SAC ¶ 28.) In yet a third set of allegations, he says he "and/or his attorney called the lender and/or servicer" of the loans to advise them of his financial difficulties and request a modification, but that "the lender and/or servicer failed, refused and/or neglected to work with" him in "any reasonable way," and instead "demanded that the loans be immediately brought current" or else he would face foreclosure. (SAC ¶¶ 42-44.)

The SAC also adds allegations that, in seeking to foreclose, Defendants failed to make "any reasonable efforts to determine Plaintiff's eligibility for the [United States Treasury's] Making Home Affordable Program" (SAC ¶¶ 27, 46(a)), comply with loan servicing obligations for Fannie Mae/Freddie Mac underwritten home loans (SAC ¶ 46(d)), or comply with "Applicable Pooling and Servicing Agreement Loan Serving Requirements" (SAC ¶ 46(e)).

---

[3] The SAC omits the original complaint's TILA claim based on a failure to provide notice of the right to cancel. It adds claims alleging violation of Cal. Civ. Code § 2923.52; negligent servicing; violation of the National Housing Act, 12 U.S.C. § 1701x(c)(5); breach of fiduciary duty; and "unjust enrichment/double dipping." It also includes an action for an accounting, and a claim of "unconscionability."

MINUTES FORM 11
CIVIL -- GEN                                  Page 4                    Initials of Deputy Clerk : jh-relief
                                                                        Time: /15

The SAC contains seventeen claims: (1) violation of TILA, 15 U.S.C. §§ 1601, et seq., and its implementing regulations by failing to comply with disclosure requirements (SAC ¶¶ 59-79); (2) violation of Cal. Civ. Code § 2923.5 (SAC ¶¶ 80-85) ; (3) violation of Cal. Civ. Code § 2923.52 (SAC ¶¶ 86-91); (4) violation of Cal. Civ. Code § 2923.6 (SAC ¶¶ 92-95); (5) negligent servicing (SAC ¶¶ 96-101); (6) violation of the National Housing Act, 12 U.S.C. § 1701x(c)(5) (SAC ¶¶ 102-106); (7) wrongful foreclosure (SAC ¶¶ 107-122); (8) various "unfair debt collection practices," in violation of the Rosenthal Fair Debtor Collection Practices Act ("including but not limited to" Cal. Civ. Code § 1788), the Federal Fair Debt Collections Act, 15 U.S.C. §§ 1692, et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-26170 (SAC ¶¶ 123-126); (9) for violation of Cal. Bus. & Prof. Code §§ 17200, et seq.; (10) breach of the implied covenant of good faith and fair dealing (SAC ¶¶ 137-148); (11) an action to cancel the loan instrument (SAC ¶¶ 149-153); (12) an action to quiet title (SAC ¶¶ 154-157); (13) breach of fiduciary duty (SAC ¶¶ 158-163); (14) an action for an accounting (SAC ¶¶ 164-166); (15) "unconscionability" (SAC ¶¶ 167-171); (16) an action for rescission in equity (SAC ¶¶ 172-178); (17) and "unjust enrichment/double dipping" (SAC ¶¶ 179-185).

The claims for violation of Cal. Civ. Code §§ 2923.5 and 2923.52; wrongful foreclosure; unfair debt collection practices; violation of Cal. Bus. & Prof. Code § 17200; and unjust enrichment/double dipping, as well as those to cancel the instrument, to quiet title, and for an accounting are brought against all Defendants. The breach of the implied covenant of good faith and fair dealing and "unconscionability" claims, and the claim for rescission in equity, are brought against all Defendants except Quality. The claims for violation of TILA and Cal. Civ. Code § 2923.6, for negligent servicing, and for violation of the National Housing Act, are brought only against the FDIC, OneWest, and Does 2 through 10. The breach of fiduciary duty claim is brought only against Quality and Does 2 through 10.

As remedies for these violations, the SAC seeks the same remedies as in the initial complaint, in addition to an accounting. (SAC p. 40).

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Although liberally granted, leave to amend is not automatic. The Ninth Circuit strongly favors allowing amendment, and a district court should only deny a motion for leave to amend upon a showing of bad faith, undue delay, prejudice to the opposing party, or futility of the amendment. Royal Ins. Co. of America v. Southwest Marine, 194 F.3d 1009, 1016 (9th Cir. 1999).

## V. DISCUSSION

The Opposing Defendants argue that Plaintiff should not be granted leave to amend

because amendment would be futile, since each of the claims contained in the proposed SAC fails to state a claim.

Amendment is futile if a claim, as amended, would fail to state a claim under the standard applied on a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988), and any defect in the pleading cannot "possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). Thus, Plaintiff will only be granted leave to amend his complaint if he can show that the claims, as amended, establish a plausible entitlement to relief. See Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).

Plaintiff makes the legally flawed argument that "courts do not ordinarily consider the validity of a proposed amended pleading in deciding whether to grant leave to amend." Reply at 3, citing SAES Getters S.p.A. v. Aeronex, Inc., 219 F. Supp.2d 1081, 1086 (S.D. Cal. 2002). As noted above, the validity of the proposed amended pleading is at the heart of futility analysis. The case Plaintiff cites does not support his assertion at all, as the court there explicitly stated that "courts will determine the legal sufficiency of a proposed amendment using the same standard as applied on a Rule 12(b)(6) motion." SAES Getters S.p.A., 219 F. Supp.2d at 1086, citing Miller, 845 F.2d at 214.

Plaintiff also argues, without any citation to supporting authority, that claims cannot be deemed "futile" until after discovery is complete. (Reply at 3.) The 12(b)(6) standard is always applied prior to the completion of discovery, however. To state a claim, a complaint must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence" demonstrating an entitlement to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). That discovery has yet to occur does not preclude a court from examining whether a complaint meets the 12(b)(6) plausibility standard.

The court examines each of the claims in the proposed amended complaint in turn. Plaintiff fails to argue regarding the viability of any of the claims, but the Court nonetheless gives due consideration to each claim.

**A. First Claim: TILA**

The first claim in the proposed SAC alleges a violation of TILA based on a failure to comply with the statute's disclosure requirements.

TILA contains a one-year statute of limitations. 15 U.S.C. § 1640(e). Plaintiff's TILA claim is premised on failures to make disclosures at the time the loans were executed in July 2007.

(SAC ¶¶ 18-19.) This action was not filed until April 2009, well beyond the end of the limitations period.

At the hearing on this motion, for the first time, Plaintiff argued that his TILA claim has been

equitably tolled, citing Ralston v. Mortgage Investors Group, Inc., No. C 08-536 JF (RS), 2009 WL 688858 (N.D. Cal. Mar. 16, 2009). The Ninth Circuit has held that "the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." King v. California, 784 F.2d 910, 915 (9th Cir. 1986), cert. denied, 484 U.S. 802 (1987). See also Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993); Ayala v. World Savings Bank, FSB, 616 F. Supp.2d 1007, 1019 (C.D. Cal. 2009).

But as one district court recently noted, to assert equitable tolling, a complaint must include actual factual allegations as to how plaintiffs were precluded from discovering the TILA violation, particularly "in such a case as the one before the Court since the vast majority of Plaintiffs' alleged violations under TILA are violations that are self-apparent at the consummation of the transaction- *e.g.,* not being provided a notice of one's right to rescind the transaction at the time of closing, not being properly provided with the annual percentage rate, finance charges, total amount financed, payment schedule, etc." Cervantes v. Countrywide Home Loans, Inc., No. CV 09-517-PHX-JAT, 2009 WL 3157160, at *4 (D. Ariz. Sept. 24, 2009).

As plead, the SAC contains no facts suggesting discovery was precluded, and thus there is no basis for invoking equitable tolling. In Ralston, notably, the court relied upon the plaintiff's specific allegations that "the loan documents were so confusing as to obfuscate the true terms of the loan, and that because he did not understand the true terms of the loan at the time of the transaction, he did not realize [the TILA violation] until later." 2009 WL 688858 at *3. The SAC here contains no similar allegations. Accordingly, the SAC fails to state a viable TILA claim, as it is time-barred, and amendment is futile. Nevertheless, it cannot be said Plaintiff could never state such facts, and thus state a TILA claim. See Tanuvasa v. F.D.I.C., No. CV 09-02795 DDP (AGRx), 2009 WL 3108568, at *2 (C.D. Cal. Sept. 23, 2009) (dismissing TILA claim but granting leave to amend "to include facts relevant to the applicability of equitable tolling"); Rabb v. BNC Mortg., Inc., No. CV 09-4740 AHM (RZx) 2009 WL 3045812, at *2 (C.D. Cal. Sept. 21, 2009) (same); Ayala, 616 F. Supp.2d at 1020 (same). Accordingly, the Court will entertain a further motion for leave to amend should Plaintiff seek to revise his TILA claim.

**B. Second Claim: Cal. Civ. Code § 2923.5**

Plaintiff's second claim in the proposed SAC alleges a violation of Cal. Civ. Code § 2923.5. Passed as part of the Perata Mortgage Relief Act, Civ. Code § 2923.5 imposes several requirements on lenders before they may file a notice of default and nonjudicially foreclose upon a property. First, the statute imposes a requirement of "due diligence." Cal. Civ. Code § 2923.5(g). Such due diligence requires that the lender take several steps before foreclosure, including providing a borrower with contact information for a United States Department of Housing and Urban Development ("HUD")-approved counseling agency. (Id.) The lender must also contact the borrower "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a)(2). Only when 30 days have elapsed after contact is made in such an effort may a lender file a notice of default. Cal. Civ. Code § 2923.5(a)(1).

**(1) Against MERS**

MERS argues that it cannot be a party to a Cal. Civ. Code § 2923.5 claim, since it transferred its sole interests under the applicable Deed of Trust to Indymac Federal Bank FSB on November 26, 2008. (Defs.' Request for Judicial Not. ("RJN"), Ex. B.)[4] The Notice of Default was not filed in this case until December 17, 2008. (SAC ¶ 27.) As such, MERS was no longer a "mortgagee, trustee, beneficiary, or authorized agent" subject to the requirements of § 2923.5 at the time of foreclosure. Moreover, neither the allegations of the FAC nor the Notice of Default and Notice of Trustee Sale, included by Plaintiff with the SAC, show any involvement by MERS in the foreclosure proceedings. See SAC Ex. A (Notice of Default), SAC Ex. B (Notice of Trustee Sale). The SAC thus fails to state a claim against MERS under Civ. Code § 2923.5, and any amendment is futile.

**(2) Against OneWest**

OneWest makes multiple arguments as to why any amendment to the Civ. Code § 2923.5 claim against it is likewise futile.

OneWest argues that the Notice of Default, as well as Plaintiff's own allegations, establish its compliance with the requirements of section 2923.5. Since, as noted above, the SAC contains contradictory and confusing allegations regarding the contacts between OneWest and Plaintiff, the Court cannot determine whether, accepting these allegations as true, OneWest complied with the minimal statutory requirement that it "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a)(2). While this does not mean the claim is futile, it does suggest that the claim, as alleged in the SAC, violates Fed. R. Civ. Pro. 8, as it is "so verbose, confused and redundant that its true substance, if any, is well disguised." Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th Cir. 2008), quoting Gillibeau v. City of Richmond, 417 F.2d 426, 431 (9th Cir. 1969). While the Court could allow Plaintiff to propose yet another amended complaint to remedy this defect, such amendment would be futile if, as OneWest suggests, the statute does not create a private right of action.

Under California law, a statute will only be deemed to contain a private right of action if the Legislature has manifested an intent to create such a right. Moradi-Shalal v. Fireman's Fund Ins. Companies, 46 Cal. 3d 287, 305 (1988).

The Perata Mortgage Relief Act was enacted relatively recently, and thus California courts have had little chance to examine its provisions. Nevertheless, section 2923.6, passed along with section 2923.5, clearly does not create a private right of action. That section solely "creat[es] a duty between a loan servicer and a loan pool member. The statute in no way confers standing on a borrower to contest a breach of that duty." Farner v. Countrywide Home Loans, No. 08cv2193

---

[4] The Court may "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988), and does so here.

EDCV 09-1389-VAP (CWx)
MARCO A. GAITAN v FDIC, et al.
MINUTE ORDER of October 5, 2009

BTM (AJB), 2009 WL 189025, at *2 (S.D. Cal. Jan. 26, 2009). Other courts to consider this question have agreed unanimously with the Farner court. See Tapia v. Aurora Loan Servs., LLC, No. 1:09-cv-01143 AWI (GSA), 2009 WL 2705853, at *1 (E.D. Cal. Aug. 25, 2009); Anaya v. Advisors Lending Group, No. CV F 09-1191 LJO DLB, 2009 WL 2424037, at *8 (E.D. Cal. Aug. 5, 2009); Pantoja v. Countrywide Home Loans, Inc., --- F. Supp. 2d ---, No. C 09-01615 JW, 2009 WL 2423703, at *7 (N.D. Cal. July 9, 2009); Connors v. Home Loan Corp., No. 08cv1134-L(LSP), 2009 WL 1615989, at *7 (S.D. Cal. June 9, 2009).

Whether or not section 2923.5 creates a private right of action, however, has not been the subject of unanimity among the courts. Only two courts have considered this question, and they have reached inconsistent results. See Yulaeva v. Greenpoint Mortgage Funding, Inc., No. CIV. S-09-1504 LKK/KJM, 2009 WL 2880393, at *11 (E.D. Cal. Sept. 03, 2009) (assuming without deciding that section 2923.5 does not provide a private right of action); Ortiz v. Accredited Home Lenders, Inc., --- F. Supp. 2d ---, No. 09 CV 0461 JM (CAB), 2009 WL 2058784, at *5 (S.D. Cal. Jul. 13, 2009) (finding section 2923.5 does contain a private right of action, as "the California legislature would not have enacted this 'urgency' legislation, intended to curb high foreclosure rates in the state, without any accompanying enforcement mechanism.").

Under California law, "courts are not at liberty to impute a particular intention to the Legislature when nothing in the language of the statute implies such an intention." Dunn-Edwards Corp. v. Bay Area Air Quality Management Dist., 9 Cal. App. 4th 644, 658 (1992). Thus, "if the Legislature intends to create a private cause of action, we generally assume it will do so directly, in clear, understandable, unmistakable terms." Vicko Ins. Servs., Inc. v. Ohio Indemnity Co., 70 Cal. App. 4th 55, 62-63 (1999), quoting Moradi-Shalal, 46 Cal. 3d at 294-295 (internal marks omitted).

Section 2923.5 contains no language that indicates any intent whatsoever to create a private right of action. As such, the Court concludes that section 2923.5 does not contain such a right, and that amendment of the claim would be futile.[5]

**C. Third Claim: Cal. Civ. Code § 2923.52**

The third claim in the proposed SAC alleges a violation of Cal. Civ. Code § 2923.52(a). Section 2923.52(a) requires a mortgagee to wait "at least 90 days after the lapse of three months" from the filing of a notice of default before filing a notice of sale. However, the statute was not enacted until May 21, 2009, and explicitly only became operative "14 days after the issuance of regulations, which shall include the form of the application for mortgage loan servicers, by the commissioner." Cal. Civ. Code § 2923.52(d). The Notice of Sale that forms the basis of Plaintiff's section 2923.52 claim was effected on March 18, 2009. (SAC ¶ 89.) Since the statute did not apply

[5] OneWest also argues the claim is futile because Plaintiff has failed to tender the full amount due and owing under the loans, and that plaintiff has not stated "any violation of HAMP." Given the Court's conclusions above, it is unnecessary to reach either of these arguments.

MINUTES FORM 11
CIVIL -- GEN
Page 9
Initials of Deputy Clerk : jh-relief
Time: /15

to the transaction, Plaintiff fails to state a claim, and amendment is futile.

**D. Fourth Claim: Cal. Civ. Code § 2923.6**

The fourth claim in Plaintiff's proposed SAC alleges violation of Cal. Civ. Code § 2923.6. As noted above, there is no private right of action under section 2923.6. Moreover, section 2923.6 imposes no duty on any party, as it is merely a statement of "Legislative findings and declarations." See Ruiz v. Saxon Mortg. Servs., No. CV09-02766 AHM (SSx), 2009 WL 1872465, at *2 n. 2 (C.D. Cal. June 29, 2009). As such, Plaintiff fails to state a claim and amendment is futile.

**E. Fifth Claim: Negligent Servicing**

The fifth claim in the proposed SAC alleges "negligent servicing." The Opposing Defendants argue that the proposed amendment to add this claim is futile, since there is "no such cause of action." Opp'n at 14. However, liberally construed, this claim can be read as one sounding in general negligence.

Under California law, "[t]he elements of an action for negligence are the existence of duty (the obligation to other persons to conform to a standard of care to avoid unreasonable risk of harm to them); breach of duty (conduct below the standard of care); causation (between the defendant's act or omission and the plaintiff's injuries); and damages." Merrill v. Navegar, Inc., 26 Cal. 4th 465, 500 (2001). Nevertheless, parties to a contractual relationship, such as a mortgagor and mortgagee, cannot bring a tort claim unless a legal duty independent of the contract itself has been violated. Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 102-03 (1995).

No such duty is implicated here. The SAC alleges OneWest breached its duties of "honesty, fair dealing and good faith," "to follow the applicable standards of residential single family mortgage lending and servicing," "to diligently exercise skill and care in the performance of their servicing duties with respect to Plaintiff's mortgage," and "to investigate and disclose all facts known to them materially affecting the subject mortgage and any loss mitigation or foreclosure prevention available to Plaintiff." (SAC ¶¶ 98-99.)

Since the duties of honesty, fair dealing and good faith are contained in every contract under California, law, see Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga, 175 Cal. App.4th 1306, 1332 (2009), these duties are not "independent" of the loan contracts. Moreover, any claims based on the breach of these duties duplicate Plaintiff's breach of the implied covenant of good faith and fair dealing claim, which rests on the same facts. See Frank Music Corp. v. Metro-Goldwyn-Mayer Inc., 886 F.2d 1545, 1556 (9th Cir. 1989) (affirming dismissal of duplicative claims).

As to the other alleged duties, under California law, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (1991). "Liability to a borrower for negligence

arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" Id., quoting Wagner v. Benson, 101 Cal. App. 3d 27, 35 (1980). See also Wilkerson v. World Sav. & Loan Ass'n, No. CIV S-08-2168 LKK DAD PS, 2009 WL 2777770, at *4 (E.D. Cal. Aug. 27, 2009); Marks v. Ocwen Loan Servicing, No. C 07-02133 SI, 2008 WL 344210, at *6 (N.D. Cal. Feb. 6, 2008). Moreover, in the context of nonjudicial foreclosures, California courts have held repeatedly that the common law imposes no duties of notice other than those required by statute or contract. I.E. Associates v. Safeco Title Ins. Co. 39 Cal. 3d 281, 287-288 (1985); Diediker v. Peelle Financial Corp., 60 Cal. App. 4th 288, 295-296 (1997).

The proposed SAC contains no allegations suggesting that OneWest acted outside its "conventional role as a mere lender of money." As such, the proposed amendment of the complaint is futile. Amendment may not be futile, however, if Plaintiff can amend the claim to include such allegations. Accordingly, the Court will entertain a further motion for leave to amend should Plaintiff seek to revise his negligent servicing claim.

**F. Sixth Claim: Violation of The National Housing Act**

The sixth claim in the proposed SAC seeks to enforce "the foreclosure prevention loan servicing requirement imposed on Defendants pursuant to the National Housing Act, 12 U.S.C. § 1701x(c)(5) [,] which requires all private lenders servicing non-federally insured home loans . . . to advise borrowers" of any home ownership counseling they or the United States Department of Housing and Urban Development ("HUD") may offer. (SAC ¶ 103.) The Opposing Defendants argue there is no private right of action to enforce this statutory provision.

"The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang, 376 F.3d 831 (9th Cir. 2004). By its structure, the National Housing Act "govern[s] relations between the mortgagee and the government, and give[s] the mortgagor no claim for duty owed or for the mortgagee's failure to follow" the statute or its implementing regulations. Mitchell v. Chase Home Finance LLC, No. 3:06-CV-2099-K, 2008 WL 623395, at *3 (N.D. Tex. Mar. 4, 2008). As such, courts have held that the National Housing Act generally does not contain a private right of action. See City of Rohnert Park v. Harris, 601 F.2d 1040, 1046-47 (9th Cir. 1979); Saratoga Sav. & Loan Ass'n v. Fed. Home Loan Bank of San Francisco, 724 F. Supp. 683, 690 (N.D. Cal. 1989); Mitchell, at *3; Fantroy v. Countrywide Home Loans, Inc., 2007 WL 2254941, No. 3:06-CV-1889-K, at *2 (N.D. Tex. July 24, 2007); Goss v. Fairfield Housing Authority, No. 3:03CV0935(WIG), 2006 WL 1272623, at *3 (D. Conn. Mar. 14, 2006). The provision asserted by Plaintiff is no exception. See Fouche' v. Shapiro & Massey L.L.P., 575 F. Supp. 2d 776, 780 n.7 (S.D. Miss. 2008).

The Court agrees that there is no indication of an intent to create a private right of action in 12 U.S.C. § 1701x(c)(5). As such, Plaintiff cannot state a claim, and the proposed amendment is futile.

**G. Seventh Claim: Wrongful Foreclosure**

The seventh claim in the proposed SAC is one for "wrongful foreclosure," and asserts that the FDIC, OneWest, MERS, and Quality are and were not "the holder of the note, payment of which was secured by the security instrument," nor were they "in possession of the note properly endorsed to" them or "otherwise entitled by law" to initiate foreclosure. (SAC ¶ 110.) Hence, Plaintiff alleges that the Defendants had no right to initiate foreclosure proceedings. (SAC ¶ 111.) Plaintiff also claims the substitution of trustee form, transferring interests from Indymac to OneWest was defective, since it was improperly notarized eight days after it was signed. (SAC ¶ 112.)

Plaintiff's argument about the "holder of the note" is premised on his interpretation of Cal. Com. Code §§ 3301, 3309. (SAC ¶ 119.) Those statutory provisions reflect California's adoption of the Uniform Commercial Code, and generally define a "Person entitled to enforce" a "lost, destroyed or stolen instrument." Non-judicial foreclosure in California is not governed by this statute, but rather by Cal. Civ. Code §§ 2924, et seq. "The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive." Moeller v. Lien, 25 Cal. App. 4th 822, 834 (1994). Accordingly, Plaintiff cannot assert a claim based on a failure to comply with the inapplicable Commercial Code.

Plaintiff's other basis for this claim also fails as a matter of law. Cal. Civ. Code § 2934a requires a document substituting a trustee under a trust deed to be acknowledged. The document is a valid transfer of title even if it is not acknowledged or recorded until later, however. See Wilson v. Pac. Coast Title Ins. Co., 106 Cal. App. 2d 599, 602 (1951) (declaring substitution of trustee valid even though not acknowledged until two years after execution of document).

Since neither of the legal bases for Plaintiff's wrongful foreclosure claim are valid, he fails to state a claim and amendment is futile.

**H. Eighth Claim: Unfair Debt Collection Practices**

The eighth claim in the proposed SAC alleges various "Unfair Debt Collection Practices." The claim actually contains claims under three different statutes: the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), "including but not limited to" Cal. Civ. Code § 1788; the Federal Fair Debt Collections Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-26170.

Cal. Civ. Code § 1788 merely states the short title of the Rosenthal Fair Debt Collection Practices Act, so it is unclear what provision of that statute Plaintiff accuses Defendants of violating. Whatever provision of the RFDCPA Plaintiff relies upon, though, he cannot state a claim against any of the Defendants. The statute only applies to "debt collectors," defined as "any person[s] who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). The only attempt to act on a debt alleged in the complaint is the attempted nonjudicial foreclosure, and "foreclosure does not constitute debt


collection under the RFDCPA." Izenberg v. ETS Services, LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008), quoting Ines v. Countrywide Home Loans, Inc., No. 08cv1267 WQH (NLS), 2008 WL 4791863, at *3 (S.D. Cal. Nov. 3, 2008). Therefore, Plaintiff cannot state a RFDCPA claim based on the allegations in the SAC.

The FDCPA likewise only applies to debt collectors as defined by statute. 15 U.S.C. § 1692a(6). As under the RFDCPA, "foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." Izenberg, 589 F. Supp. 2d at 1199, quoting Ines, at *2 (alteration in original). Thus, Plaintiff cannot state a FDCPA claim based on the allegations in the SAC.

In the proposed SAC, Plaintiff does not specify what specific provisions of RESPA he alleges Defendants have violated. The opposing defendants have not made any specific objections to the RESPA claim. But "neither [Defendants] nor the Court are under any obligation to guess as to the manner in which [Defendants]' conduct allegedly violated RESPA." Izenberg, 589 F. Supp. 2d at 1200, citing Assoc. Gen. Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). See also Fed. R. Civ. Pro. 8(a)(2) (pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief"). The SAC thus does not state a claim under RESPA. Nevertheless, it cannot be said Plaintiff could never state such a claim. Accordingly, the Court will entertain a further motion for leave to amend should Plaintiff seek to revise his RESPA claim.

**I. Ninth Claim: Cal. Bus. & Prof. Code §§ 17200, et seq.**

Plaintiff's ninth claim alleges violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. (the "UCL"). It is predicated on Defendants' alleged violations of TILA, Cal. Civ. Code §§ 2923.5, 2923.52, and 2923.6, and the RFDCPA, as well as Defendants' negligent servicing, wrongful foreclosure, and failure "to determine Plaintiff's eligibility for the Making Home Affordable Program." (SAC ¶¶ 130-131.)

As noted above, the complaint fails to state a claim for negligent servicing, wrongful foreclosure, or violation of the RFDCPA or Cal. Civ. Code §§ 2923.52 or 2923.6 on the merits. It also fails to state a Cal. Civ. Code § 2923.5 claim against MERS on the merits. Hence, Plaintiff cannot state a UCL claim based on those predicate violations, since he has not alleged any "unlawful" activity. Since, as plead in the proposed in the SAC, any TILA claim is time-barred, Plaintiff cannot state a UCL claim based on that theory. See Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000) ("A court may not allow plaintiff to 'plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition.'"); Rubio v. Capital One Bank (USA), N.A., 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008). Should the Plaintiff choose to amend his TILA claim to allege facts entitling him to equitable tolling, he may reassert this claim.

As to the section 2923.5 claim against OneWest as a predicate to the UCL claim Nevertheless, "a private plaintiff may bring a UCL action even when 'the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action.'" Kasky v. Nike, Inc., 27 Cal. 4th 939, 950 (2002), quoting Stop Youth Addiction, Inc. v. Lucky Stores, Inc., 17 Cal. 4th 553, 565 (2002). Thus, plaintiff may be able to state a UCL claims based on OneWest's alleged violation of Cal. Civ. Code § 2923.5. As discussed above, the factual allegations of the proposed SAC regarding are too contradictory and confusing for the Court to discern whether Plaintiff has alleged a violation of that statute. Thus, the proposed amended UCL claim is futile. However, the Court will entertain a further motion for leave to amend should Plaintiff seek to revise his UCL claim against OneWest as premised on a violation of section 2923.5.

**J. Tenth Claim: Breach of Implied Covenant of Good Faith and Fair Dealing**

The tenth claim in the proposed SAC alleges breach of the implied covenant of good faith and fair dealing. The actual acts that form the basis for Plaintiff's claim for breach of the implied covenant of good faith and fair dealing are unclear from the face of the SAC. None of the facts in the SAC can support a claim for breach of the implied covenant of good faith and fair dealing, however.

Inasmuch as plaintiff alleges the failure to negotiate or delay foreclosure was a breach of the implied covenant, that claim must fail, since "the implied covenant of good faith and fair dealing does not impose an affirmative duty on a party to forbear from enforcing rights expressly given under the contract." Storek & Storek, Inc. v. Citicorp Real Estate, Inc., 100 Cal. App. 4th 44, 56 n. 10 ( 2002). Inasmuch as Plaintiff alleges wrongdoing in the origination of the loan, those claims cannot be asserted against the remaining Defendants, who, indisputedly, were not involved in the initial negotiation of the loan. See Bunag v. Aegis Whoelsale Corp., No. C 09-00558 MEJ, 2009 WL 2245688, at *3 (N.D. Cal. July 27, 2009). The proposed SAC thus fails to state a claim for breach of the implied covenant of good faith and fair dealing, and amendment is futile.

**K. Eleventh Claim: Cancellation of Instrument**

The eleventh claim in the proposed SAC seeks cancellation of various legal documents, since the "Notice of Default, Notice of Trustee Sale and potentially any Trustee's Deed or other such instrument purporting to transfer title are invalid as an instrument of transfer." (SAC ¶ 151.) Since this claim fails to provide any legal basis as required by Fed. R. Civ. Pro. 8(a)(2), the claim fails, and amendment is futile.

**L. Twelfth Cause of Action: Quiet Title**

In the twelfth claim in the proposed SAC, Plaintiff requests the Court cancel the deed of trust and quiet his title to the property against the claims of all Defendants. (SAC ¶¶ 156-157.)

A basic requirement of an action to quiet title is an allegation that plaintiffs "are the rightful owners of the property, *i.e.,* that they have satisfied their obligations under the Deed of Trust."

Kelley v. Mortgage Elec. Reg. Sys., Inc., No. C 09-01538 SI, --- F. Supp. 2d ---, 2009 WL 2475703, at *7 (N.D. Cal. Aug. 12, 2009). "[A] mortgagor cannot quiet his title against the mortgagee without paying the debt secured." Watson v. MTC Financial, Inc., No. 2:09-CV-01012 JAM-KJM, 2009 WL 2151782 (E.D. Cal. Jul. 17, 2009), quoting Shimpones v. Stickney, 219 Cal. 637, 649 (1934).

Since Plaintiff concedes he has not paid the debt secured by the mortgage, he cannot sustain an action to quiet title, and amendment of this claim is futile.

**M. Thirteenth Claim: Breach of Fiduciary Duty**

The thirteenth claim in the proposed SAC alleges breach of fiduciary duty, and is brought against Quality only, who has yet to appear in this action; the Opposing Defendants do not address the claim. Nonetheless, the Court examines the claim as set forth in the proposed SAC and determines it fails as a matter of law. As a foreclosure trustee, Quality has no fiduciary duty to Plaintiff, since "a trustee in a nonjudicial foreclosure is 'not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary.'" Hendrickson v. Popular Mortg. Servicing, Inc., No. C 09-00472 CW, 2009 WL 1455491, at * 7 (N.D. Cal. May 21, 2009), quoting Pro Value Properties, Inc. v. Quality Loan Service Corp., 170 Cal. App. 4th 579, 583 (2009). Plaintiff thus fails to state a claim and amendment would be futile.

**N. Fourteenth Claim: Accounting**

Plaintiff's fourteenth claim seeks an accounting pursuant to 15 U.S.C. § 1635(b) and 12 U.S.C. § 2605. Section 1635(b), a provision of TILA, provides for return of money or property following rescission. Plaintiff has not alleged facts to show that he is entitled to rescission under TILA, and in the SAC, has removed any allegations as to Defendants' failure to provide notice of the right to cancel under TILA. Thus, he is not entitled to an accounting on this basis. Likewise, 12 U.S.C. § 2605, a provision of RESPA, also is inapplicable. Section 2605 requires certain disclosures to be made relating to assignment, sale, or transfer of the right to service a loan. Its remedy provisions include damages and costs, but section 2605 does not provide for accounting. See 12 U.S.C. § 2605(f). Accordingly, the proposed SAC fails to state an independent claim for accounting, and amendment is futile. Insofar as Plaintiff seeks accounting as an equitable remedy, Plaintiff may seek this relief in connection with an appropriate claim in any further amended pleading filed.

**O. Fifteenth Claim: Unconscionability**

The fifteenth claim in the proposed SAC is one for "unconscionability." No such affirmative claim exists. Unconscionability may be raised as a defense in a contract claim, or as a legal argument in support of some other claim, but it does not constitute a claim on its own. See Dean Witter Reynolds, Inc. v. Superior Court, 211 Cal. App. 3d 758, 766 (1989) (Cal. Civ. Code § 1670.5 allows court to refuse to enforce or limit an unconscionable contract, but does not create an affirmative cause of action); Carey v. Lincoln Loan, 203 Or. App. 399, 423-24 (2005) ("[U]nconscionability is not a basis for a separate claim for relief."). As such, the claim is without

merit, and amendment is futile.

**P. Sixteenth Claim: Rescission in Equity**

The sixteenth claim in the proposed SAC seeks the equitable rescission of the loan agreements under Cal. Civ. Code § 1689(b)(5). The right of rescission is unavailable to Plaintiff, since he is in default on the contracts, however. “The right to rescind a contract rests only with the party who is without default.” Nelson v. Spence, 182 Cal. App. 2d 493, 499 (1960). Hence, the claim is without merit, and amendment would futile.

**Q. Seventeenth Claim: “Unjust Enrichment/ Double Dipping”**

The seventeenth and final claim in the proposed SAC asserts that Defendants' auction of her house would "amount[ ] to unjust enrichment and is what is known as 'double dipping.'" (SAC ¶ 184.) Plaintiff claims he is entitled to relief since “OneWest has committed to the Home Affordable Modification Program . . . [and] refused to determine Plaintiff’s eligibility for a loan modification.” Plaintiff fails to show how participation in this program gives rise to a private cause of action. Insofar as Plaintiff’s unjust enrichment claim is based on other statutory violations, (SAC ¶ 181), the Court finds the claim fails for the reasons each of those claims independently fail as a matter of law, as described in discussing each independent claim above.

**VI. CONCLUSION**

Since amendment would be futile, as none of the seventeen claims contained in Plaintiff’s proposed Second Amendment Complaint state a claim on, Plaintiff’s motion for leave to amend is DENIED without prejudice to a subsequent motion for leave to file an amended complaint containing only TILA, UCL, negligent servicing and RESPA claims, in accordance with the limitations indicated above.

**IT IS SO ORDERED.**